WEAVER, J.
In this case we consider the proper application of the exclusionary rule in a civil forfeiture proceeding in which the property subject to forfeiture has been illegally seized. We further consider whether In re Forfeiture of United States Currency, 166 Mich App 81; 420 NW2d 131 (1988), was correctly decided. In *447 deciding these questions, we first hold that under Immigration & Naturalization Service v Lopez-Mendoza, 468 US 1032; 104 S Ct 3479; 82 L Ed 2d 778 (1984), illegally seized property is not immune from forfeiture. We also agree with the holding in United States v $639,558, 293 US App DC 384, 387; 955 F2d 712 (1992), that property subject to forfeiture that was illegally seized “is not ‘excluded’ from the proceeding entirely.” Instead, the illegally seized property “may be offered into evidence for the limited purpose of estabhshing its existence, and the court’s in rem jurisdiction over it.” Id.
Because we find that the exclusionary rule was never meant to preclude illegally seized property from a subsequent civil forfeiture proceeding involving that property, we hold that, in accord with In re Forfeiture of United States Currency and MCL 333.7521, as long as the order of forfeiture can be established by a preponderance of evidence untainted by the illegal search and seizure, the forfeiture is valid.
For the reasons summarized by the Court of Appeals in its decision affirming the circuit court’s judgment and order, we agree with the Court of Appeals that the circuit court did not clearly err in finding that, although the money was illegally seized, there was a preponderance of untainted evidence to support a finding of civil forfeiture pursuant to MCL 333.7521(1)(f).
Accordingly, we affirm the Court of Appeals judgment, and we further conclude that the Court of Appeals in In re Forfeiture of United States Currency reached the correct result.
FACTS
Claimant Tamika S. Smith was driving west on 1-94 when she was stopped for speeding by Michigan State *448 Trooper James Lass. Smith was traveling with her two small children in a rental car rented by her adult male passenger, claimant Todd F. Fletcher. Trooper Lass obtained photo identification in the form of a driver’s license from both Smith and Fletcher and checked both licenses for outstanding warrants. Lass discovered that Smith’s license had been suspended, and that Fletcher’s license was valid, but that Fletcher had been identified as an individual to whom “officer safety caution” applied. After checking Fletcher’s criminal history, Trooper Lass learned that Fletcher had been arrested previously for possession of cocaine and for weapons offenses. On the basis of this information, Trooper Lass returned to the rental car and apparently advised Smith that he was going to search the trunk of the rental car, in which Trooper Lass subsequently discovered a backpack containing $180,975 in cash.[1] Smith was cited for speeding and driving on a suspended license.[2]
The state filed a complaint for forfeiture of the currency discovered in the backpack, pursuant to MCL 333.7521(1)(f). Before the forfeiture proceeding, claimant Smith filed a motion to suppress evidence of the backpack and its contents on the basis that the evidence was illegally seized in violation of the Fourth Amendment because Smith did not consent to the search of the rental car. The circuit court agreed with Smith, determined that there was no probable cause to search the trunk of the car, and granted Smith’s motion to suppress.
*449 While the circuit court ruled that the $180,975 in currency was suppressed, the court allowed the prosecutor to introduce other evidence during the forfeiture proceeding. Specifically, the prosecutor presented evidence to show that Smith was a drug courier and that the $180,975 seized by Trooper Lass had been intended for the purchase of illegal drugs. The prosecutor submitted evidence that in the three months before Smith was stopped for speeding, Smith had rented several different rental cars at least four times for three days each time; that she had driven for several hundred miles on each occasion, but could not recall where she had driven; and that Smith’s tax records indicated that she generally earned between $4,000 and $5,000 a year and had no income in 2002, the year when she was stopped for speeding.
In addition, an expert in the area of illegal drug trafficking testified that 1-94, the highway on which Smith was driving when she was stopped, is a recognized major drug corridor between Detroit and Chicago, with large amounts of cash found in rental cars traveling west, and large amounts of illegal drugs recovered in rental cars going east. The circuit court further found that Smith’s explanation of how she came to be traveling with $180,975 in cash was neither consistent nor credible. Ultimately, the court ruled in favor of forfeiture, concluding that, even when the illegally seized evidence is excluded, the prosecutor established by a preponderance of the evidence that the money was intended to buy illicit drugs.
Claimant Smith appealed, and the Court of Appeals, finding no clear error, affirmed the forfeiture.[3] Smith *450 sought leave to appeal the Court of Appeals decision, and we granted leave to appeal to consider “(1) the proper application of the exclusionary rule in a forfeiture proceeding in which the property subject to forfeiture has been illegally seized, and (2) whether In re Forfeiture of United States Currency, 166 Mich App 81 (1988), was correctly decided.”[4]
STANDARD OF REVIEW
This Court reviews de novo questions of law. Cowles v Bank West, 476 Mich 1, 13; 719 NW2d 94 (2006). The proper application of the exclusionary rule in a civil forfeiture proceeding is a question of law subject to review de novo. People v Stevens (After Remand), 460 Mich 626, 631; 597 NW2d 53 (1999). A trial court’s decision in a forfeiture proceeding will not be overturned unless it is clearly erroneous.[5] A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made.[6]
ANALYSIS
APPLICATION OF THE EXCLUSIONARY RULE TO CIVIL FORFEITURE UNDER MCL 333.7521
A forfeiture proceeding pursuant to MCL 333.7521(1)(f) is a proceeding in rem. As such, the item that is the subject of the forfeiture proceeding is the “offender” and the “claimant” is the owner, or perhaps only a possessor, of the item in question. As the United *451 States Supreme Court explained in Various Items of Personal Property v United States:[7]
It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The forfeiture is no part of the punishment for the criminal offense. Origet v United States, 125 U. S. 240, 245-247 [8 S Ct 846; 31 L Ed 743 (1888)].
In One 1958 Plymouth Sedan v Pennsylvania, 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965), the United States Supreme Court held that the exclusionary rule applied to forfeiture proceedings because forfeiture proceedings are quasi-criminal in nature. In this case, the prosecutor has raised questions about the continuing viability of One 1958 Plymouth Sedan. However, the prosecutor has not appealed the suppression order, and, therefore, this issue is not before us. Nevertheless, while One 1958 Plymouth Sedan has not been overruled and, thus, is still applicable, several subsequently decided cases indicate that the underpinnings of One 1958 Plymouth Sedan have been weakened.
For example, when the United States Supreme Court was presented with the question whether to exclude evidence from a federal civil tax proceeding on the basis that the evidence was obtained by a state law-enforcement officer relying in good faith on a defective warrant, the Court declined to extend the exclusionary rule to the federal proceeding.[8] In so holding, the Court recognized that the primary purpose of the exclusionary rule, which is a judicially created remedy, is to deter *452 future unlawful police conduct. As such, courts impose the exclusionary rule in criminal proceedings to deter police officers from making future illegal searches and seizures. Thus, the United States Supreme Court recognized that to further extend the exclusionary rule would not be prudent given that “the additional marginal deterrence provided by forbidding a different sovereign from using the evidence in a civil proceeding surely does not outweigh the cost to society of extending the rule to that situation.”[9]
In Pennsylvania Bd of Probation & Parole v Scott, 524 US 357, 363; 118 S Ct 2014; 141 L Ed 2d 344 (1998), the United States Supreme Court explained that it has “repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials.” Additionally, the Supreme Court has declined to apply the exclusionary rule when the proceedings fall outside the offending officer’s primary focus.[10] The Court has “never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.”* [11] The deterrent function is strongest where the unlawful conduct would result in a criminal penalty.[12] Extending the rule beyond the officer’s primary zone of interest would have, at most, only an incremental deterrent effect.[13]
*453 As acknowledged by the Court of Appeals in In re Forfeiture of United States Currency, “the Michigan forfeiture statute [MCL 333.7521(1)(f)] closely parallels the analogous federal statute, 21 USC 881(a)(6).”[14] MCL 333.7521(1)(f)[15] is contained within the controlled *454 substances article of the Public Health Code. In summary, § 7521(1)(f) provides for the forfeiture of “any thing of value that is furnished or intended to be furnished in exchange for a controlled substance ... in violation of this article [or] that is traceable to an exchange for a controlled substance,... or that is used or intended to be used to facilitate any violation of this article ... .”[16] Forfeiture proceedings under the administrative section of the Michigan Public Health Code are not within the offending police officer’s primary zone of interest. The primary goal of a police officer is to collect evidence to be used to convict a defendant in a criminal proceeding. The police officer’s main focus is not on obtaining evidence for a civil forfeiture action.
We further note, as amicus curiae, the Prosecuting Attorneys Association of Michigan, correctly observes, that there is a distinction between civil and criminal forfeiture proceedings. As mentioned in Various Items of Personal Property, supra at 580-581:
At common law, in many cases, the right of forfeiture did not attach until the offending person had been convicted and the record of conviction produced. But that doctrine did not apply, as this court in an early case pointed out, where the right of forfeiture was “created by statute, in rem, cognisable on the revenue side of the exchequer. The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be malum prohibitum, or malum in se.” The Palmyra, [25 US (12 Wheat) 1, 14; 6 L Ed 531 (1827)].
There is an additional distinction between civil and criminal forfeitures, namely that the latter are punitive *455 in nature, while the former are not. Section 7521(1)(f) is not a criminal statute. There are no penalties or fines associated with a violation of this section. Further, there are no provisions for inquiry into the guilt or innocence of the owner or possessor of the item subject to forfeiture. Instead, the intent of civil forfeiture statutes like § 7521(1)(f) is to remove from circulation all cash, property, and contraband used to further drug-trafficking. Indeed, in Bennis v Michigan,[17] the United States Supreme Court affirmed this Court’s decision that forfeiture under Michigan’s nuisance abatement statute[18] was appropriate even when the joint owner of the forfeited vehicle was innocent. In so holding, the United States Supreme Court stated:
[Petitioner] claims she was entitled to contest the abatement by showing she did not know her husband would use it to violate Michigan’s indecency law. But a long and unbroken line of cases holds that an owner’s interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to he put to such use. [Id. at 446 (emphasis added).]
Given the distinctions between a criminal proceeding against a defendant accused of a crime and a civil forfeiture against the offending object, we decline to rule that the exclusionary rule ever acts as a complete *456 bar to bringing a forfeiture proceeding against an object that has been illegally seized. We instead examine the approach adopted by the Court of Appeals in In re Forfeiture of United States Currency and consider whether that decision was correct.

In re FORFEITURE OF UNITED STATES CURRENCY

The Court of Appeals affirmed the forfeiture of the $180,975 in currency on the basis of In re Forfeiture of United States Currency. Like claimant Smith herein, the petitioner there, Kenneth Williams, moved to suppress evidence of controlled substances and $30,632.41 in cash illegally seized from his home by the police. The trial court granted Williams’s motion to suppress and all criminal charges were dismissed. Thereafter, the city of Lansing brought a forfeiture proceeding against the seized items, and the trial court ruled in the city’s favor. Williams appealed, arguing that the trial court erred because illegally seized evidence could not be the subject of a subsequent forfeiture action. The Court of Appeals, when faced with the issue now before us, observed:
Michigan courts have not decided the specific question whether property seized pursuant to a search warrant which is subsequently held invalid may still be subject to forfeiture under the Michigan forfeiture statute. However, this Court has stated that property and monies described in the analogous federal statute are subject to forfeiture even where the seizure of the property subject to the forfeiture is subsequently found to be unlawful. Michigan State Police v 33d District Court, 138 Mich App 390, 395; 360 NW2d 196 (1984). [In re Forfeiture of United States Currency, supra at 87-88.]
Williams contended, as does claimant Smith here, that One 1958 Plymouth Sedan bars a forfeiture pro *457 ceeding when the subject of the forfeiture is illegally seized property. The Court of Appeals in In re Forfeiture of United States Currency, supra at 88-89, disagreed:
One 1958 Plymouth Sedan holds that evidence and property illegally seized cannot be used in a forfeiture proceeding, and not that the illegally seized property cannot be forfeited.
The decision in United States v “Monkey” a Fishing Vessel, 725 F2d 1007, 1012 (CA 5, 1984), addressing forfeiture of illegally seized property under federal law, is instructive:
“This court recently decided that
“ ‘even ... if the seizure were illegal, it would not bar the government’s right to claim the vehicle through forfeiture proceedings. Improper seizure does not jeopardize the government’s right to secure forfeiture if the probable cause to seize the vehicle can be supported with untainted evidence. United States v Eighty-Eight Thousand, Five Hundred Dollars, 671 F2d 293, 297-298 (CA 8, 1982); United States v One 1975 Pontiac Lemans, 621 F2d 444, 450-451 (CA 1, 1980); United States v One Harley Davidson Motorcycle, 508 F2d 351, 351-352 (CA 9, 1974). This position is not contrary to One 1958 Plymouth Sedan v Pennsylvania, 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965). That case holds that an object illegally seized cannot in any way be used either as evidence or as the basis for jurisdiction. Therefore, evidence derived from a search in violation of the fourth amendment must be excluded at a forfeiture proceeding. In the case at bar, all evidence of probable cause was developed independent of the seizure of the vehicle. Thus, even if a warrant were required, the failure to secure it would not bar the forfeiture of the vehicle.’ [United States v One 1978 Mercedes Benz, 4-Door Sedan, 711 F2d 1297 (CA 5, 1983).]”
We hold that illegally seized property is forfeitable under MCL 333.7521; MSA 14.15(7521), so long as the probable cause for its seizure can be supported with *458 untainted evidence and any illegally seized property is excluded from the forfeiture proceeding. In this case, the illegally seized articles were never introduced into evidence. Thus, the circuit court complied with an interpretation of Michigan’s forfeiture statute which parallels the federal statute and is consistent with this opinion, despite its erroneous assertion as to the holding of One 1958 Plymouth Sedan.
We first note that the Court of Appeals panel in the instant case erred in relying on the erroneous standard of proof cited in In re Forfeiture of United States Currency when the panel held that “probable cause supported by untainted evidence existed for the seizure.” In re Forfeiture of $180,975, slip op at 2. The correct burden of proof is a preponderance of the evidence, not probable cause.[19]
We agree with the Court of Appeals conclusion that while One 1958 Plymouth Sedan holds that illegally seized evidence and property cannot be used in a subsequent forfeiture proceeding, One 1958 Plymouth Sedan does not state that illegally seized property cannot be forfeited. We disagree, however, with the Court of Appeals inclusion in its analysis of the questionable conclusion made by the Fifth Circuit Court of Appeals that One 1958 Plymouth Sedan holds that “ ‘an object illegally seized cannot in any way be used either as evidence or as the basis for jurisdiction.’ ”[20]
*459 Although One 1958 Plymouth Sedan characterized the forfeiture proceeding in that case as being “quasi-criminal” and requires application of the exclusionary rule to forfeiture proceedings, neither One 1958 Plymouth Sedan nor the exclusionary rule prevents the mention of the illegally seized property that is the subject of the forfeiture proceeding. In fact, in Lopez-Mendoza, supra at 1039-1040, the United States Supreme Court stated that “[t]he ‘body’ or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. A similar rule applies in forfeiture proceedings----” The United States Court of Appeals for the District of Columbia Circuit properly interpreted One 1958 Plymouth Sedan and Lopez-Mendoza in United States v $639,558:[21]
When illegally seized property is itself the “defendant” in the forfeiture proceeding, it may not be “relied upon to sustain a forfeiture,” Plymouth Sedan, 380 U.S. at 698, but it is not “excluded” from the proceeding entirely. Such property may be offered into evidence for the limited purpose of establishing its existence, and the court’s in rem jurisdiction over it. This, we think, is the import of the Second Circuit’s recent statement that with respect to unlawfully obtained property that is the subject of the forfeiture suit, “the property itself cannot be excluded from the forfeiture action,” United States v. $ 37,780 in U.S. Currency, 920 F. 2d 159 at 163 (2d Cir. 1990). In other words, as the Supreme Court suggested in INS v. Lopez-Mendoza, 468 U.S. 1032 at 1041, 104 S. Ct. 3479, 82 L.Ed.2d 778 (1984), the fact that the defendant property had been seized after an illegal search does not “immunize” it from forfeiture, any more than a defendant illegally arrested is immunized from prosecution. United States v. Crews, 445 U.S. 463 at 474, 100 S. Ct. 1244, 63 L.Ed.2d 537 *460 (1980). See, e.g., United States v. One (1) 1987 Mercury Marquis, 909 F.2d 167 at 169 (6th Cir. 1990); United States v. U.S. Currency $31,828, 760 F.2d 228 at 230-31 (8th Cir. 1985). Thus, other evidence, legally obtained, may be introduced to establish that the property should be forfeited to the government. United States v. One (1) 1971 Harley-Davidson Motorcycle, 508 F.2d 351 (9th Cir. 1974). In this case the government apparently had no such other evidence and, for that reason, the district court dismissed the action after ordering the cash (and the keys and ledgers) suppressed.
We agree with the conclusions in United States v $639,558 that (1) the illegal seizure of property does not immunize it from forfeiture, and (2) illegally seized property that is the subject, or “res,” of the forfeiture proceeding may be offered into evidence for the limited purpose of establishing its existence and the court’s in rem jurisdiction over it. We therefore find that the Court of Appeals in In re Forfeiture of United States Currency reached the correct result. We further hold that illegally seized property is forfeitable under MCL 333.7521 as long as the forfeiture can be supported by a preponderance of untainted evidence.
While illegally seized evidence itself is physically excluded, it is not entirely excluded from the forfeiture proceeding. However, questions concerning this excluded evidence should be limited to the circumstances surrounding its existence. For example, in the case of illegally seized cash, the state should not be permitted to exploit the search by asking how the money was packaged, or whether evidence of drugs was detected on the money. In addition, any other legally obtained evidence may be introduced to support the forfeiture.[22]
*461 Justice MARKMAN, in dissent, questions the propriety of permitting the consideration of the “surrounding circumstances” of illegally seized property during a forfeiture proceeding.[23] Further, the dissent apparently *462 would immunize the illegally seized property such that a court could not consider anything regarding that property, even the presence of a large sum of money, post at 485-486. Yet this reasoning has been rejected. In United States v $493,850 in United States Currency,[24] the government sought to forfeit illegally seized cash, but the claimant asserted that the cash could not even be mentioned during the forfeiture proceeding and that the illegally seized cash should be treated as if it were a “widget.” The United States District Court for Arizona disagreed, holding:
However, the Court does not believe that exclusion of the cash means the Court must consider the defendant cash as a “widget.” The Court believes it can still take notice of the fact that the defendant is cash. This is obviously stated in the caption of the case. Perhaps the denominations making up the amount and the actual money itself cannot be put into evidence. However, there is no way for the Government to show that a “widget” is the product of a drug transaction and, therefore, the Court does not believe it has to disregard the fact that one of the defendants is cash.[25]
Because a basic purpose of a drug forfeiture proceeding is to establish that the item subject to forfeiture (here the $180,975 in cash) is connected to drug activity, a court cannot be forced to pretend that the cash does not exist. Nor must the court turn a blind eye to the conclusions one reaches when considering all of the circumstances surrounding its existence and its implications. Rather, we apply a commonsense approach to drug forfeiture hearings in which the item subject to *463 forfeiture has been excluded from evidence:[26] while the court may not consider the specific physical characteristics of the item itself, the court can consider evidence presented in relation to the fact of the item’s existence, such as the fact that claimant’s testimony about the money itself is questionable. This approach in no way redefines the judicially created exclusionary rule. Here, the court can consider the reliability of the claimant’s testimony concerning the money’s origin, its existence in her rental car its intended purpose, the amount of the money in relation to her reported income, the fact that she was traveling along a known drug corridor in a rental car and that she had rented several cars in the preceding weeks, and any other circumstantial factors not specifically related to the physical characteristics of the money.
Our conclusion is supported by United States v $22,287 in United States Currency,[27] in which the United States District Court for the Eastern District of Michigan held that the circumstances surrounding illegally seized cash may be considered. The court held that although all the evidence seized during an illegal drug raid ($22,287 in currency, a bag of heroin, two scales, and some firearms) was excluded, the forfeiture was still supported on the basis of a conversation between a police officer and a purported drug seller, as well as certain circumstances concerning the money. Specifically, the court noted that $22,287 was “an unusually large amount of cash for any individual to have on *464 hand” and, further, that the amount of cash was “very close to the price of ‘nineteen five’ ($19,500.00) noted by Johnny [purported drug seller] as the cost of an ‘lb’ (pound of heroin).”[28] These are precisely the type of factors regarding the existence of the cash that the dissent would preclude from consideration.[29]
EVIDENCE SUPPORTING FORFEITURE
Turning now to the circuit court’s forfeiture hearing, we note that the circuit court correctly excluded evidence of the illegally seized backpack and its contents. Our next inquiry is whether there was a preponderance of untainted evidence to support the forfeiture. First, with respect to the $180,975 in cash found in the claimant’s rental car, while the cash itself was excluded from evidence, the trial court could properly consider the implications of the presence of such a large amount of cash in the vehicle. The Sixth Circuit Court of Appeals has held that “carrying a large sum of cash is strong evidence of some relationship with illegal drugs.”[30] Here, as noted in the circuit court’s findings, *465 the ruling of drug forfeiture was based in part on the presence of the $180,975 in currency:
Well, what do we have here? We have a very large amount of money. It is not illegal to have it. It is unheard [sic] of, but it is mighty unusual to have One Hundred Eighty Thousand Dollars ($180,000) in cash being transported in this vehicle.
The circuit court further noted:
It is also a little unusual and I guess it would create in one’s mind a suspicion, which isn’t sufficient, but it is a suspicion when the person transporting it [cash] and driving the vehicle has no apparent means to produce that kind of income or have that kind of money. And Exhibit 3 tells us that her [claimant’s] income peaked I think at one year at Fourteen Thousand (14,000) and usually it is Four to Five Thousand Dollars ($5,000) a year. So there is no good explanation why she would have it.
The circuit court’s suspicion about the claimant’s ability to produce such a large amount of income, given the evidence of claimant’s negligible taxable earnings, is also a factor that federal courts have used in concluding that there is sufficient evidence to support a drug forfeiture. For example, in United States v $174,206 in United States Currency, 320 F3d 658, 662 (CA 6, 2003), the Sixth Circuit Court of Appeals held that evidence of the claimants’ lack of legitimate income, by itself, was sufficient evidence to support the forfeiture of cash:
*466 The United States has shown by a preponderance of the evidence that the properly [$174,206 in cash] is traceable to the drug offenses and is thus subject to forfeiture under 21 U.S.C. § 881(a)(6). The evidence before the district court showed that the Claimants’ legitimate income was insufficient to explain the large amount of currency found in their possession. State tax records showed that Richard had filed no income tax returns from 1994 through 1999, and that Love had filed no income tax returns from 1994 through 1997. Love’s 1998 and 1999 returns showed income of $ 15,147.00 and $ 15,995.00, respectively. In sum, then, the United States showed that the Claimants had a total of $31,142 in legitimate income between 1994 and 1999. The Claimants’ safe deposit boxes contained $174,206.00. This evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by the statute.[31]
The circuit court’s ruling of forfeiture was also based on the testimony of the expert on illegal drug trafficking:
And what we have discovered from hearing the testimony of the expert is that when in patrolling the interstate, and I-94 particularly, that I-94 is a corridor for transporting drug monies westbound and drugs eastbound.
And on the number of stops with large amounts of money with very little exception, large amounts of money *467 without drugs headed westbound and large amounts of drugs without money is headed easthound. So, what this tells us is that the probability that this is a westbound transportation of drug money.
Further, that more often than not rental cars are used for this purpose, and that there are frequent rental of vehicles from Detroit hy the petitioner [claimant] for us. And that makes it more likely that she was transporting drug money.
Federal courts have held that evidence seized in a known drug corridor is probative in drug forfeiture cases. For example, in United States v $87,375 in United States Currency, 727 F Supp 155, 161 (D NJ, 1989), the district court held:
The fact that a large amount of money was being transported southward from New York through a well known drug corridor by a Colombian national who resides in Miami further supports the Government’s showing of probable cause.[32] The reputation of an area for criminal activity may be relied on to support an inference of criminal conduct. See United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984). The area where Mr. Camacho was stopped by Trooper Tomasello, along Route 40 in Salem County, New Jersey, carries such a volume of drug traffic that it is commonly known as “Cocaine Alley.” See United States v. $ 33,500, Civil Action No. 86-3348(MHC) (D.N.J. Aug. 17, 1988); United States v. $ 32,310, Civil Action No. 85-4004(MHC) (D.N.J. June 23, 1988). Colombia is a known *468 major source of drugs which eventually get trafficked throughout the United States, and Miami is a known center for drug trafficking and money laundering. United States v. $ 364,960, 661 F2d at 323-24; United States v $ 5,644,540, 799 F.2d 1357, 1363 (9th Cir 1986). We are entitled to take such common experience considerations into account. United States v. $ 319,820,620 F. Supp. [1470, 1477 (ND Ga, 1985)].
A claimant’s explanation for the presence of large amounts of cash is also evaluated in drug forfeiture cases. Federal courts have held that a claimant’s false statement is probative of drug activity. “[IJnconsistencies and contradictions are relevant in determining whether the government has met its burden in justifying forfeiture.”[33] For example, in United States v Funds in the Amount of $30,670,[34] the claimant gave inconsistent testimony about the source of the $30,670 in cash contained in the his gym bag seized by drug enforcement agents. In finding under the “totality of circumstances” that there was a preponderance of evidence supporting forfeiture, the Seventh Circuit Court of Appeals considered the inconsistency and unreliability of the claimant’s testimony:
Calhoun’s [claimant’s] explanations regarding his travel to Phoenix are suspect. On the day his cash was seized, Calhoun was traveling to Phoenix, a recognized source city for illegal narcotics. See, e.g., [United States v] $22,474 [in United States Currency], 246 F.3d [1212] at 1216 [(CA 9, 2001)] (“Phoenixf] [is] a known source city for drugs.”); cf. United States v. Currency, U.S. $ 42,500.00, 283 F.3d 977, 981 (9th Cir. 2002) (giving weight to fact that claimant was “traveling from New York to San Diego, well known source cities for drugs”); United States v. $ 141,770.00 in U.S. Currency, *469 157 F.3d 600, 604 (8th Cir. 1998) (giving weight to fact that claimant was traveling from California, “a drug source state”). He had made frequent trips to Phoenix — seven trips within two months, not three as he claimed. Calhoun alleged that he stayed at the same hotel each trip (at “55th and the expressway”) but could not recall the hotel’s name; subpoenaed travel records indicate that Calhoun did not stay at any hotel at “55th and the expressway.” Yet he stayed in Phoenix at least 27 nights during the two months he had been traveling there (making his forgetfulness all the less credible). All of these inconsistencies are relevant in weighing whether the government has established its burden justifying forfeiture. See [United States u] $ 242,484 \in United States Currency], 389 F.3d [1149, ] 1164 [(CA 11, 2004)] (finding it proper to consider claimant’s inconsistent statements and changing stories in considering whether the government’s burden is met); $ 22,474, 246 F.3d at 1217 (“[Claimant’s] inconsistent statements about the money and his reasons for being in Phoenix tended to support an inference that the money was drug related.”); United States v. $ 67,220.00 in U.S. Currency, 957 F.2d 280, 286 (6th Cir. 1992) (“Misstatements are probative of possible criminal activity.”) [United States v Funds, supra at 467.]
As was the case in United States v Funds, claimant here gave unreliable and inconsistent testimony about why she had $180,975 in cash in the trunk other rental car.[35] In addition, claimant’s testimony that she in *470 tended to use the money to buy a house in Indianapolis was not credible.[36] And while the dissent has suggested that if the cash subject to forfeiture is removed from consideration, claimant’s behavior appears “ordinary and innocent,” post at 486, we remind the dissent that the circuit court had the benefit of judging the credibility of the claimant’s testimony on the stand juxtaposed with the testimony of the illegal drug trafficking expert. Given claimant’s inability to provide a credible explanation for how she came to have such a large amount of cash in a rental car, while traveling along a known drug trafficking corridor, and given her unexplained and *471 repeated history of using rental cars, as well as the absence of evidence supporting her explanation for the intended use of such a large amount of cash, the circuit court could properly find that her behavior was not “ordinary and innocent.”
Under such circumstances, it is not surprising that ultimately the circuit court found claimant’s testimony unpersuasive:
Her [claimant’s] testimony [is] that she was transporting the money to buy a house and in the Indianapolis area, that there is no buy/sell agreement. There is no documentation. There is no substantiation of that. Her testimony about the money and how it happened to get into the car was changing and ambiguous, and very honestly not very credible. So when all gets said and done, I don’t give much credibility to her testimony given the contradictions involved.
In deciding whether there is sufficient evidence to support a ruling of drug forfeiture, the Eleventh Circuit Court of Appeals has held that “we look to the totality of circumstances and do not try to pick them off, one by one, by conjuring up some alternative hypothesis of innocence to explain each circumstance in isolation.”[37]
CONCLUSION
We conclude that the exclusionary rule was not meant to immunize illegally seized property from a subsequent civil forfeiture proceeding in which the seized property is the subject of the proceeding. We hold that, in accord with In re Forfeiture of United States Currency and MCL 333.7521, as long as the forfeiture can be established by a preponderance of untainted evidence, the forfeiture is valid. Consequently, it was appropriate for the circuit court to proceed with the *472 forfeiture hearing as long as the illegally seized currency was excluded from evidence. As summarized by the Court of Appeals in its opinion affirming the circuit court, a preponderance of independent evidence supported the forfeiture:
At trial, expert testimony was presented that I-94 is a primary “pipeline” for narcotic sales. Couriers carry large sums of money west on I-94 to purchase drugs in Chicago. The drugs are then transported and delivered east to Detroit and other eastern cities. Cash is the customary method of payment; cars are the most common form of conveyance; couriers frequently use rental cars; and the trips are quick. The evidence indicated that claimant was driving a rental car. Further, in the three-months before the stop, claimant had rented at least four cars for three days each, placed several hundred miles on each car, and did not recall where she had driven. Additionally, her tax records reflected that from 1998 through 2001, claimant generally earned between $ 4,000 and $5,000 a year. An expert opined that the large amount of cash claimant was transporting west on I-94 was consistent with claimant’s being a courier and intending to purchase drugs. [In re Forfeiture of $180,975, slip op at 2.]
Reviewing the circuit court’s findings, under the “totality of circumstances,” we agree with the Court of Appeals that the circuit court did not clearly err in determining that although the money had been illegally seized, there was a preponderance of untainted evidence to support a civil forfeiture pursuant to MCL 333.7521(1)(f).
Accordingly, we affirm the Court of Appeals judgment below and we further conclude that the Court of Appeals in In re Forfeiture of United States Currency reached the correct result.
Taylor, C.J., and Corrigan and Young, JJ., concurred with Weaver, J.

 Because it was not clear that Smith consented to the search of the trunk, after an evidentiary hearing, the trial court granted Smith’s motion to suppress evidence of the backpack and its contents on the ground that the seizure was illegal under the Fourth Amendment, US Const, Am IV, and Const 1963, art 1, § 11.

 No criminal charges arising out of this incident were ever filed against Smith.

 In re Forfeiture of $180,975, unpublished memorandum opinion of the Court of Appeals, issued December 28, 2004 (Docket No. 249699).

 In re Forfeiture of $180,975, 475 Mich 909 (2006).

 People v Burrell, 417 Mich 439, 448; 339 NW2d 403 (1983); People v United States Currency, 148 Mich App 326, 329; 383 NW2d 633 (1986).

 Kitchen v Kitchen, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

 282 US 577, 581; 51 S Ct 282; 75 L Ed 558 (1931).

 United States v Janis, 428 US 433, 454; 96 S Ct 3021; 49 L Ed 2d 1046 (1976).

 Id. at 453-454. See also Lopez-Mendoza, supra at 1041-1042 (during civil deportation proceeding, court declined to apply exclusionary rule to bar admission of illegally seized evidence); Pennsylvania Bd of Probation & Parole v Scott, 524 US 357, 366-367; 118 S Ct 2014; 141 L Ed 2d 344 (1998) (exclusionary rule does not bar admission of evidence at parole revocation hearing even though evidence obtained in violation of Fourth Amendment).

 See Janis, supra, Lopez-Mendoza, supra, and Scott, supra.

 Scott, supra at 368.

 See id.

 Id.

 21 USC 881(a)(6) provides:
The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(6) All monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all monies, negotiable instruments and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

 MCL 333.7521(1)(f) states:
The following property is subject to forfeiture:
(f) Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article that is traceable to an exchange for a controlled substance, an imitation controlled substance, or other drug in violation of this article or that is used or intended to be used to facilitate any violation of this article including, but not limited to, money, negotiable instruments, or securities. To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner’s knowledge or consent. Any money that is found in close proximity to any properly that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) is presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence.

 Id. MCL 333.7104(2) provides, “ ‘Controlled substance’ means a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72.” Or, put more simply, a “controlled substance” is an illegal drug.

 516 US 442; 116 S Ct 994; 134 L Ed 2d 68 (1996).

 MCL 600.3801 states:
Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons,... is declared a nuisance,.. . and all.. . nuisances shall be enjoined and abated as provided in this act and as provided in the court rules. Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance.

 People v United States Currency, 158 Mich App 126, 130; 404 NW 2d 634 (1986) (“[T]he party asserting the claim has the burden of proving his case by a preponderance of the evidence. See Blue Cross & Blue Shield of Michigan v Governor, 422 Mich 1, 89; 367 NW 2d 1 (1985), reh den 422 Mich 1206 (1985), app dis 474 US [805]; 106 S Ct 40; 88 L Ed 2d 33 (1985).”).

 In re Forfeiture of United States Currency, supra at 89, quoting United States v One 1978 Mercedes Benz, 4-Door Sedan, 711 F2d 1297, 1303 (CA 5, 1983) (emphasis added).

 United States v $639,558, supra at 387 n 5.

 The dsissent by Justice Maekman argues that “[b]ecause suppressed evidence is inadmissible for broader purposes,” a court may not consider the surrounding circumstances or implications of any suppressed evi *461 dence. Post at 479-480. In support of this contention, the dissent cites People v LoCicero (After Remand), 453 Mich 496, 508; 556 NW2d 498 (1996), a criminal proceeding in which this Court held that “[t]he exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.” Yet the issue in LoCicero was whether a police officer had reasonable suspicion under Terry v Ohio, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), to stop defendant’s vehicle. Because we concluded that the officer’s observations did not amount to a reasonable suspicion and therefore the stop violated the Fourth Amendment, we applied the exclusionary rule to suppress the illegally obtained evidence. LoCicero is thus distinguishable in that it does not address the application of the exclusionary rule in a civil forfeiture proceeding in which the illegally seized property is the “defendant.” Further, LoCicero does not hold that the identity of the defendant or the circumstances surrounding the existence of the defendant may not be considered when the defendant is illegally seized. *462 implications and circumstances surrounding evidence that is the subject of forfeiture and that has been illegally seized.

 The dissent implies that in determining that there was insufficient independent evidence to support a forfeiture, the District of Columbia Circuit Court of Appeals in United States v $639,558 did not permit the consideration of the “surrounding circumstances” of the illegally seized money; however, the circuit court, in fact, did not even rule on this issue because the prosecutor had already conceded that he could not proceed without the suppressed evidence. United States v $639,558, supra at 387.
In addition, the dissent asserts that the Fifth Circuit Court of Appeals in United States v “Monkey” also did not rely on the “surrounding circumstances” concerning suppressed evidence, “but rather held that a forfeiture was supported in spite of the suppression,” post at 482 (emphasis in original), because of independent evidence. Again, the dissent mischaracterizes the actual holding: the Fifth Circuit Court of Appeals did not rule on the question whether it could properly consider the “surrounding circumstances” of the suppressed evidence because it did not need to even reach that issue in order to decide the case.
Thus, contrary to the dissent’s assertions, neither United States v $639,558 nor United States v “Monkey” stands for the proposition that the circumstances surrounding the illegally seized evidence may not be considered to support a forfeiture. And, in fact, the dissent fails to cite even one case supporting its contention that a court may not consider the

 2006 US Dist LEXIS 2370, *14 (D Ariz, January 23, 2006).

25 Id. at *15-16.

 The Eleventh Circuit Court of Appeals has taken a commonsense approach in determining whether there is probable cause to establish forfeiture: “Finally, and most importantly we do not take an academic or theoretical approach. Instead we eschew clinical detachment and use a common sense view to the realities of normal life.” United States v $242,484 in United States Currency, 389 F3d 1149, 1167 (CA 11, 2004).

 520 F Supp 675, 680 (ED Mich, 1981), aff'd 709 F2d 442 (CA 6, 1983).

 Id.

 The dissent, post at 481, claims that with the exception of our citation of United States v $22,287, supra, the forfeiture cases cited in our opinion are not in dispute and are “irrelevant.” Yet we note that while the dissent may not dispute the propositions for which these cases are cited, the parties do. Specifically, while the prosecutor has asserted that illegally seized evidence may be introduced into evidence for any purpose, some of the “irrelevant” cases we cite reject this assertion and establish that illegally seized evidence may only be offered for the purpose of establishing its existence and court’s jurisdiction over such evidence. See pp 458-460 of this opinion, discussing One 1958 Plymouth, supra; Lopez-Mendoza, supra; and United States v $639,558, supra.

 United States v $67,220 in United States Currency, 957 F2d 280, 285 (CA 6, 1992), citing United States v $215,300, 882 F2d 417, 419 (CA 9, 1989). See also United States v $87,375 in United States Currency, 727 F Supp 155, 161 (D NJ, 1989) (“The fact of an extremely large amount of *465 money by itself constitutes strong evidence that the money was furnished in exchange for illegal drugs. United States v $ 2,500, 689 F. 2d 10, 16 (2d cir. 1982)[.]”); United States v $84,615 in United States Currency, 379 F3d 496, 501-502 (CA 8, 2004) (“[P]ossession of a large amount of cash (here, nearly $ 85,000) is strong evidence that the cash is connected with drug activity.”); United States v $433,980 in United States Currency, 473 F Supp 2d 685, 691 (ED NC, 2007) (“[T]he additional circumstantial proof discussed above (particularly the large amount of the currency as well as its unusual packaging) persuades the Court that it is more likely than not that the $433,980 was substantially related to a drug offense . .. .” ).

31 See also United States v Parcels of Land, 903 F2d 36, 39-40 (CA 1, 1990) (“The sheer magnitude of Laliherte’s expenditures supports an inference that his property acquisitions were funded with the proceeds of drug trafficking; Laliberte’s millions of dollars in purchases far exceeded his reported average annual income of $27,690, and there was no other apparent legitimate source of money to account for this magnitude of expenditures. See, e.g., United States v $ 250,000, 808 F. 2d [895,] 899 [CA 1, 1987] (noting the absence of any apparent legitimate sources of income that could account for the property sought to be forfeited ....”).

32 The federal “probable cause” burden of proof has been replaced:
Forfeiture proceedings commenced prior to the effective date of CAFRA [Civil Assist Forfeiture Reform Act] (August 23, 2000) applied a lesser standard of proof — probable cause. See United States v. 5 S 351 Tuthill Road, 233 F.3d 1017, 1023 (7th Cir. 2000) (CAFRA “requires the government to prove the connection between the property to be forfeited and the drug activity by a preponderance of the evidence, rather than to prove merely probable cause to believe there is a connection.”). [United States v Funds in the Amount of $30,670, 403 F3d 448, 454 n 4 (CA 7, 2005).]

 United States v $159,880 in United States Currency, 387 F Supp 2d 1000, 1015 (SD sIowa, 2005).

 403 F3d 448 (CA 7, 2005).

 While evidence of the money itself had been suppressed by the circuit court, the court allowed the prosecutor to question the claimant about the basis for its existence. When asked about where the $180,975 in cash came from, claimant said it was her money and she got a little bit of it from a friend, Todd Fletcher. She was not sure how much she got from Fletcher, nor did she know from where Fletcher obtained the money. She claimed that Fletcher gave it to her “throughout the years” and that she had been storing it in a “personal area.” With respect to the money’s appearance in the trunk of the rental car, she denied ever putting it in the trunk or having any knowledge of it being placed in the trunk. She claimed that the first time she observed the presence of the money was when she was stopped for speeding that day.

 Claimant initially stated that she “had plans” to get a rental car sometime around September 28, 2002, to go to Indianapolis to “get a house” and that before September 28, 2002, she had “very frequently” gone to look for a house in Indianapolis. But when questioned about four instances before that date when she had rented cars, claimant could not remember on what date, if any, she would have used a rental car to go to Indianapolis. Further, claimant admitted that she took no luggage, clothing, or overnight bags with her on this trip to Indianapolis.
Claimant first testified that she was going to Indianapolis to see her sister-in-law, Betty Smith, to look for a house, but she later testified that she was actually there to see her brother, Richard Smith. When reminded of her earlier testimony about going to see Betty Smith to help her find a house, claimant stated, “Well, we had already got everything straight about the house.” Still later, claimant indicated that when she went to Indianapolis on September 28, she had already had contact with a realtor. When asked the name of the agent, she said, “Sam. ” When asked whether she had entered into a purchase agreement, her response was “Entered into a purchase agreement?” After the prosecutor explained what the agreement was, claimant said that she had not signed a purchase agreement but had settled on a price with “Sam” for “like 180 something.” Claimant could not say when she would have negotiated this price with the agent, and when asked the name of the agent’s office, she stated that it was “Morgan something.”
When questioned about her use of rental cars on July 5, July 20, July 27, and September 21,2002, and October 18,2002, she could not say what she had used the cars for, nor where she had driven, nor why the respective mileage amounts for each date were 787 miles, 558 miles, 647 miles, 125 miles, and 860 miles.

 United States v $242,484, supra at 1167.