*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LONG LAKE TOWNSHIP,

       Plaintiff-Appellee,

v

TODD MAXON and HEATHER MAXON,

       Defendants-Appellants.

FOR PUBLICATION
September 15, 2022

No. 349230
Grand Traverse Circuit Court
LC No. 18-034553-CE

## ON REMAND

Before: JANSEN, P.J., GLEICHER, C.J., and RONAYNE KRAUSE, J.

JANSEN, P.J. (*dissenting*)

For the reasons that follow, I respectfully dissent. As I concluded in the previous appeal of this case, *Long Lake Twp v Maxon*, 336 Mich App 521, 525, 542; 970 NW2d 893 (2021) (*Long Lake I*), I would again reverse the trial court order denying defendants' motion to suppress the evidence, and remand for entry of an order suppressing the photographic evidence taken by a drone. I would conclude that because the drone surveillance conducted by plaintiff implicated the Fourth Amendment, as well as Const 1963, art 1, § 11, and was therefore unlawful because it was conducted without a warrant or a recognized exception to the warrant requirement, that the violation of our state Constitution calls for suppression of the evidence obtained.

## I. ANALYSIS

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, AM IV.]

In the criminal context, evidence obtained in the course of a violation of a suspect's rights under the Fourth Amendment is subject to suppression at trial. *People v Cartwright*, 454 Mich

-1-

550, 557-558; 563 NW2d 208 (1997). See also *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (incorporating the Fourth Amendment against the states under the Fourteenth Amendment). The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v Calandra*, 414 US 338, 348; 94 S Ct 613; 38 L Ed 2d 561 (1974). "[T]he 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " *United States v Janis*, 428 US 433, 446; 96 S Ct 3021; 49 L Ed 2d 1046 (1976), quoting *Calandra*, 414 US at 347. At issue on remand is whether to apply the exclusionary rule in the zoning-enforcement action below to photographs taken by a drone of defendants' property. *Long Lake Twp v Maxon*, ___ Mich ___; 973 NW2d 615 (2022) (*Long Lake II*).

## A. UNITED STATES SUPREME COURT PRECEDENT

The United States Supreme Court has noted that, "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Janis*, 428 US at 447. Accordingly, "the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign," provided that no agreement about use of the evidence existed between the respective agencies. *Id.* at 459-460.

However, none of the United States Supreme Court cases discussed by the majority have directly dealt with the issue of drone surveillance. In *Calandra*, 414 US at 350, the United States Supreme Court held that the exclusionary rule does not apply in grand-jury proceedings. The Court similarly held that the exclusionary rule does not apply in civil deportation proceedings. *INS v Lopez-Mendoza*, 468 US 1032, 1050; 104 S Ct 3479; 82 L Ed 2d 778 (1984). And in *Stone v Powell*, 428 US 465, 494; 96 S Ct 3037; 49 L Ed 2d 1067 (1976), the Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (Citations omitted.)

However, the United States Supreme Court has held that the exclusionary rule does apply in state civil forfeiture proceedings. *One 1958 Plymouth Sedan v Pennsylvania*, 380 US 693, 696; 85 S Ct 1246; 14 L Ed 2d 170 (1965). The Court explained this apparent exception to the general rule against applying the exclusionary rule in civil cases by stating that " 'proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.' " *Id.* at 697 (citation omitted). See also *Austin v United States*, 509 US 602, 608 n 4; 113 S Ct 2801; 125 L Ed 2d 488 (1993) (reiterating that "the Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings"), citing *One 1958 Plymouth Sedan*, 380 US at 696.[1]

---

[1] Comporting with these federal precedents is *In re Forfeiture of $180,975*, 478 Mich 444; 734 NW2d 489 (2007), where the Michigan Supreme Court declined to invalidate the seizure of United States currency discovered by way of an unlawful police search on the ground that, "as long as the forfeiture can be established by a preponderance of untainted evidence, the forfeiture is valid." *Id.*

In its order to remand, our Supreme Court specifically cited *Pennsylvania Bd of Probation & Parole v Scott*, 524 US 357, 364; 118 S Ct 2014; 141 L Ed 2d 344 (1998), for the proposition that the United States Supreme Court declined to apply the exclusionary rule outside criminal trials. *Long Lake II*, ___ Mich at ___. In *Scott*, 524 US at 357, the United States Supreme Court held that "the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights." The Court reasoned that, "[e]ven when the officer performing the search is a parole officer, the deterrence benefits of the exclusionary rule remain limited," given that a parole officer differs from a police officer in that the parole officer's "relationship with parolees is more supervisory than adversarial." *Id*. at 368.[2]

The use of unconstitutionally seized evidence in parole proceedings is not at issue in this case. Further, there is no strictly federal precedent concerning application of the exclusionary rule in connection with zoning enforcement, because the federal government does not engage in zoning, and the United States Supreme Court has not specifically decided whether states are obliged to respect the exclusionary rule in that context. *Scott* is instructive, however, for indicating that the United States Supreme Court does not always demand that states resort to suppression in every situation where the federal government does. See also *Cooper v California*, 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967) ("Our holding . . . does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so."). *Scott* is most instructive insofar as it reminds this Court that it need not always apply the exclusionary rule in perfect lockstep with the United States Supreme Court's Fourth Amendment precedents.[3]

Further, an important distinction is that, while *Scott*, 524 US at 368, characterized a parole officer's relationship with parolees as "more supervisory than adversarial," even noting that "the failure of the parolee is in a sense a failure for his supervising officer," the same can hardly be said in this case for the relationship between plaintiff and its hired drone operator on the one hand, and defendants on the other. The drone operator was an agent of plaintiff looking for zoning violations against which plaintiff might take action, with municipality and drone operator both thus carrying out actions decidedly more policing than supervisory.

---

at 471. Accordingly, the Court held that "it was appropriate for the circuit court to proceed with the forfeiture hearing as long as the illegally seized currency was excluded from evidence." *Id*. at 471-472.

[2] A dissent opined that the exclusionary rule "'*is* constitutionally required, not as a "right" explicitly incorporated in the fourth amendment's prohibitions, but as a remedy necessary to ensure that those prohibitions are observed in fact.'" *Id.* at 369 (STEVENS, J., dissenting) (citation omitted).

[3] Accordingly, it would comport with our Supreme Court's approving citation of *Scott* for this Court to look beyond federal precedents and consider Michigan-based authorities, as discussed below, while reconsidering the application of the exclusionary rule in this case.

B. *KIVELA V DEP'T OF TREASURY*

Our Supreme Court also cited *Kivela v Dep't of Treasury*, 449 Mich 220; 536 NW2d 498 (1995), in its remand order, noting that the *Kivela* Court "declin[ed] to extend the exclusionary rule to a civil tax proceeding." *Long Lake II*, ___ Mich at ___, citing *Kivela*, 449 Mich 220. This Court in fact cited *Kivela* in its earlier majority opinion in this case for the proposition that "the Fourth Amendment may protect parties from unreasonable searches and seizures committed by a governmental entity in civil cases if the civil case can be considered 'quasi-criminal' and the search or seizure was committed by the governmental entity pursuing the action." *Long Lake I*, 336 Mich App at 529, citing *Kivela*, 449 Mich at 228-229. At the pages cited, *Kivela* set forth criteria that the federal Sixth Circuit considered while deciding that "the exclusionary rule does not bar the admission of illegally seized evidence during a criminal narcotics investigation in a civil tax proceeding," *Kivela*, 449 Mich at 229, and quoted the federal appellate court as follows:

> "The . . . tax proceedings were civil in nature. They were not intended to punish [the defendant] for his narcotics violations. . . . Also, there is no indication that the criminal narcotics investigation and the secondary civil tax proceeding were initiated by the same agency. . . . In the absence of such a relationship, it is unlikely that application of the exclusionary rule would further deter future violations." [*Id.*, quoting *Wolf v Comm'r of Internal Revenue*, 13 F3d 189, 195-196 (CA 6, 1993).]

In *Kivela*, our Supreme Court likewise held that financial records of sales and purchases of illegal drugs that are seized through execution of an invalid search warrant issued pursuant to a criminal investigation are nonetheless admissible for purposes of civil tax assessment proceedings. *Kivela*, 449 Mich at 222. The majority expressed disagreement with the dissent's characterization of the tax proceeding at issue as "quasi-criminal," then further stated that it was "unnecessary to even define a jeopardy tax assessment as criminal or quasi-criminal," *id*. at 237, explaining as follows:

> The exclusionary rule is designed to protect defendants from illegal searches and seizures, and to deter police officers from violating a person's Fourth Amendment rights. In this case, the defendant already reaped the benefits of the exclusionary rule. She avoided a long prison sentence. If we were to extend the exclusionary [rule] to civil tax proceedings, we would not only allow this defendant to avoid a long prison sentence, but she would also be allowed to avoid paying the taxes that *every* citizen of this state must incur. [*Id.* at 237-238.]

*Kivela* thus attached great significance to the distinction between a proceeding that threatened criminal punishment, and an otherwise unrelated administrative proceeding that threatened only tax collection.

In this case, defendants in their supplemental brief for the Supreme Court report that plaintiff "sought an order from the trial court finding that Defendants are in violation of the zoning ordinance and an order abating the alleged nuisance." Defendants thus assert that plaintiff is seeking to enforce an ordinance that every resident of the municipality must obey, while apparently nowhere asserting that plaintiff is seeking to subject them to anything actually punitive in nature, e.g., a fine. In fact, our Supreme Court in *Kivela* adopted the characterization of the subject tax-

enforcement proceedings as nonpunitive in nature, *Kivela*, 449 Mich at 229, citing *Wolf*, 13 F3d at 195-196, even though the taxpayer was presumably vulnerable to being assessed monetary penalties in connection with any past-due taxes.

Plaintiff continuously argues that it is seeking no relief or penalty against defendants other than an injunction. Indeed, Section 20.8 of the Long Lake Township Zoning Ordinance provides:

> Any land, dwellings, buildings, or structures, including tents and recreational vehicles, used, erected, altered, razed or converted in violation of this Ordinance or in violation of any regulations, conditions, permits or other rights granted, adopted or issued pursuant to this Ordinance are hereby declared to be a nuisance per se. In addition to other remedies, the Township shall have the right to commence a civil litigation in a court of competent jurisdiction to obtain injunctive or other relief that may be appropriate to stop, correct or otherwise remedy a nuisance per se.

However, Section 5 of the Long Lake Township Nuisance Ordinance, Ordinance No. 155 of 2016, provides a specific penalty:

> Any person who violates any provision of this Ordinance shall be responsible for a municipal civil infraction as defined in Public Act 12 of 1994, amending Public Act 236 of 1961, being Sections 600.101-600.9939 of Michigan Compiled Laws, and shall be subject to a fine of not more than Five Hundred and 00/100 ($500.00) Dollars. Each day this Ordinance is violated shall be considered as a separate violation. Any action taken under this Section shall not prevent civil proceedings for abatement or termination of the prohibited activity.

As such, I would again conclude that this action is "quasi-criminal" in nature given the potential penalty that could be imposed for violation of the nuisance ordinance, see *One 1958 Plymouth Sedan*, 380 US at 697-698,[4] as well as any repercussions for failing to abide by an injunctive order, including but not limited to, criminal contempt of court.

An important distinction between the instant case and *Kivela* is that, in the latter, the agency wishing to avoid application of the exclusionary rule (the Treasury Department) was wholly distinct from the one responsible for the Fourth Amendment violation (police officers), an institutional separation to which our Supreme Court attached great significance. *Kivela*, 449 Mich at 235-236. The instant case presents no such innocent agency in need of evidence improperly discovered by an unrelated other. As the majority stated in this Court's earlier opinion, "[t]here is no dispute that the drone operator here was acting as an agent for Long Lake Township, that Long Lake Township is a governmental entity, and that Long Lake Township seeks admission of its own allegedly illegally obtained evidence." *Long Lake I*, 336 Mich App at 529. Further, while in *Kivela* the Court noted that the taxpayer invoking the exclusionary rule had successfully done so

---

[4] See also *People v Earl*, 495 Mich 33, 40; 845 NW2d 721 (2014) ("The Legislature is aware that a fine is generally a criminal punishment.").

in connection with the evidence in question in her criminal trial, and that its application in the latter situation served the deterrent purpose of the rule, *Kivela*, 449 Mich at 237-238, in this case, if the exclusionary rule is not applied the offending municipality will be undeterred, and in fact left with the expectation that it would retain the benefits of any such continuing constitutional infractions.[5]

## C. THE MICHIGAN CONSTITUTION, CONST 1963, ART 1, § 11

As noted above, the Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, AM IV. Our state Constitution includes a similar guarantee, which at the time of the subject drone flights, provided as follows:

> The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.[6]]

If the obvious similarities in wording between the Fourth Amendment and the first two sentences of Const 1963, art 1, § 11 suggest coextensive interpretation, that our state provision goes beyond the Fourth Amendment to exempt itself as authority for suppression of drugs or weapons discovered by peace officers outside the curtilage of a dwelling indicates an openness to less-restrictive application of the latter's exclusionary rule. Indeed, our Supreme Court has observed that "records of the 1961 Constitutional Convention evidence an intent on behalf of the

---

[5] The concern that the exclusionary rule should not operate to allow continuing violations of the law, see *Lopez-Mendoza*, 468 US at 1033, should not arise here, because if plaintiff has probable cause to suspect defendants of the zoning violation at issue, it should have no problem obtaining, and executing, a proper search warrant.

[6] Const 1963, art 1, § 11 replaced, and is substantially similar to, Const 1908, art 2, § 10. Const 1963, art 1, § 11 was amended effective December 19, 2020, and now provides:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.

people of Michigan to retreat from the judge-made exclusionary rule . . . ." *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004). See also *People v Nash*, 418 Mich 196, 212; 341 NW2d 439 (1983) (BOYLE, J., joined by WILLIAMS, C.J.) ("Attempts to unite Michigan and United States search and seizure law by adopting the exact language of the Fourth Amendment in the proposed Michigan Constitution were defeated. Instead, the anti-exclusionary-rule proviso of Const 1908, art 2, § 10 was amended back into the proposed constitution."). Regardless, our Supreme Court has recognized that the Fourth Amendment effectively overrides the proviso added to what is now Const 1963, art 1, § 11, thus, as a practical matter, preventing the uses in criminal trials of unconstitutionally seized evidence as specified. *Sitz v Dep't of State Police*, 443 Mich 744, 759-760; 506 NW2d 209 (1993).

Perhaps it is, at least in part, because that proviso's limits on the applicability of the exclusionary rule is understood to be of negligible consequence, in light of operation of the Fourth Amendment, that the state constitutional recognition of the right to be free from unreasonable searches and seizures is generally understood to be coextensive with the federal one. See *People v Mead*, 503 Mich 205, 212; 931 NW2d 557 (2019). However, when this Court declared the two constitutional protections simply "coextensive" in *People v Katzman*, 330 Mich App 128, 132; 946 NW2d 807 (2019), vacated in part and leave denied in part, 505 Mich 1053 (2020), our Supreme Court responded as follows:

> [W]e VACATE that part of the judgment of the Court of Appeals stating that the United States and Michigan Constitutions are "coextensive" with regard to protection against unreasonable searches and seizures. See *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171]\ (2011) ("This Court has ruled that the Michigan Constitution is to be construed to provide the same protection as that secured by the Fourth Amendment, *absent compelling reason to impose a different interpretation*.") (internal quotation marks and citation omitted; emphasis added); see also *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993). [*People v Katzman*, 505 Mich 1053; 942 NW2d 36 (2020).]

The Court did not recognize any actual divergence of the two constitutional provisions in that situation, but its use of italics with its quotation of *Slaughter* suggests that the Court thought it important to issue a reminder that such divergence remains a possibility. In the other case cited, *Sitz*, 443 Mich 744, the Court cautioned that "claims that art 1, § 11 should be interpreted more expansively than the Fourth Amendment must rest on more than a disagreement with the United States Supreme Court." *Id*. at 752-753. But the latter case itself provided an example of such an occasion. The Court in *Sitz* noted that the United States Supreme permitted suspicionless sobriety checkpoint roadblocks, *id*. at 749 and n 1, citing *Michigan Dep't of State Police v Sitz*, 496 US 444, 455; 110 S Ct 2481; 110 L Ed 2d 412 (1990), and stated that, "in the context of automobile seizures, we have extended more expansive protection to our citizens," *Sitz*, 443 Mich at 776, citing Const 1963, art 1, § 11. Our Supreme Court elaborated:

> This Court has never recognized the right of the state, without any level of suspicion whatsoever, to detain members of the population at large for criminal investigatory purposes. Nor has Michigan completely acquiesced to the judgment of politically accountable officials when determining reasonableness in such a context. In these circumstances, the Michigan Constitution offers more protection than the United

States Supreme Court's interpretation of the Fourth Amendment. [*Sitz*, 443 Mich at 776-777 (quotation marks, citation, and footnote omitted).]

Application of the exclusionary rule by reference to our state Constitution's promise of protections against unreasonable searches and seizures is thus not a mere shadowing of what the United State Supreme Court demands for purposes of the Fourth Amendment. To the contrary, our Supreme Court has noted that, as part of its "commitment to the protection of liberty," it "adopted an exclusionary rule in 1919, forty-two years before it was mandated by federal law." *Id*. at 775-776. Our Supreme Court further noted, however, that, with the incorporation of the Fourth Amendment against the states, "federal constitutional precedent began to absorb our own." *Id.* at 773-774, citing *Mapp*, 367 US 643.

But federal Fourth Amendment applications of the exclusionary rule have not entirely subsumed applications of the rule pursuant to our state Constitution. In 1991, our Supreme Court noted that, "while the federal exclusionary rule has generally not been applied outside the criminal context, Michigan's exclusionary rule has in certain cases been applied to civil proceedings." *In re Jenkins*, 437 Mich 15, 28; 465 NW2d 317 (1991) (citation omitted).[7] Our Supreme Court set forth as examples *Lebel v Swincicki*, 354 Mich 427, 437-438, 440; 93 NW2d 281 (1958) (holding that evidence resulting from blood samples improperly taken from the defendant were inadmissible in a civil negligence action[8]); *Gilbert v Leach*, 62 Mich App 722, 725; 233 NW2d 840 (1975) ("*Lebel* . . . establishes the proposition that evidence obtained by an unlawful search is not admissible in civil cases in this jurisdiction"), aff'd sub nom *McNitt v Citco Drilling Co*, 397 Mich 384; 245 NW2d 18 (1976).[9]

---

[7] In that case, our Supreme Court declined to decide whether improperly discovered evidence should be suppressed in the context of judicial disciplinary proceedings, on the ground that "[t]he record contains more than ample evidence, apart from the recorded conversations, to support the findings of the master and the commission. *In re Jenkins*, 437 Mich at 28-29.

[8] In 1989, this Court cited developments in federal caselaw construing the Fourth Amendment and opined that this rule from *Lebel* "is probably no longer good law," but did so without acknowledging that the rule in question arose from our state Constitution. *People v England*, 176 Mich App 334, 344 n 2; 438 NW2d 908 (1989), aff'd sub nom *People v Perlos*, 436 Mich 305; 462 NW2d 310 (1990) (holding that the presumption, under MCL § 257.625a, that a driver has given consent to blood, urine, or breath tests if arrested for driving under the influence of alcohol or controlled substances, comports with the Fourth Amendment and Const 1963, art 1, § 11).

[9] While affirming *Gilbert*, our Supreme Court stated that "the results of tests administered pursuant to [MCL 257.625a] cannot be used in civil litigation," *McNitt*, 397 Mich at 388, but also explained that it was avoiding the constitutional question, including the opportunity to revisit *Lebel*:

[W]e see no need to decide this case on constitutional grounds because "[e]ven if we were to conclude, on reconsideration of *Lebel* . . . , that the drawing of blood from an apparently drunken driver does not violate his rights under the Michigan Constitution, the statute limits the authority of police officers to request the taking

This Court, in its earlier majority opinion in this case, did not suggest that its holding, including the invocation of the exclusionary rule, was based on anything in Const 1963, art 1, § 11 standing apart from the Fourth Amendment, and the parties' briefing for this Court urged no such differentiation. However, defendants, in their supplemental brief filed with the Supreme Court, assert that "there are compelling reasons to find that the Michigan Constitution provides a greater suppression remedy in cases such as the one at bar," and plaintiff, in its own such filing, argues to the contrary.

Again, the form of the exemption in Const 1963, art 1, § 11 from application of the exclusionary rule in effect at the time of the drone photographs (as well as the current form) is as follows: "The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state." That exemption does not apply in this case, most obviously because the evidence in question consists of nothing actually seized, let alone drugs or weapons, but rather, aerial photographs of old motor vehicles and other alleged junk.

Conversely, however, our state Constitution's express limitation on application of the exclusionary rule implies approval of it when that limitation does not apply—including when the rule has been, or might be, applied as a manifestation of Const 1963, art 1, § 11 not entirely shadowing the Fourth Amendment. Further, that proviso is instructive in that it shows special respect for households and deference to peace officers. That the instant case concerns surveillance of the curtilage of defendants' home thus implicates that respect for households. And that the actual discoverer of the challenged evidence was a drone operation under contract with a municipality hardly invokes the deference afforded to a peace officer.[10]

---

of blood and limits the use that may be made of a test result obtained pursuant to exercise of that authority." [*McNitt*, 397 Mich at 388 (second alteration in original), quoting *People v Keen*, 396 Mich 573, 576-577; 242 NW2d 405 (1976).]

[10] Our state Constitution offers no definition of "peace officer," but MCL 28.421(1)(h) defines "peace officer" as, but for specified exceptions, "an individual who is employed as a law enforcement officer . . . who is required to carry a firearm in the course of his or her duties as a law enforcement officer." Also instructive is that our Supreme Court cited a dictionary approvingly for the definition of "peace officer" as generally including "sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duty is to enforce and preserve the public peace," in the course of concluding that "[a] conservation officer is not a peace officer within the meaning of article 2, § 10, of the State Constitution, as amended." *People v Bissonette*, 327 Mich 349, 356-357; 42 NW2d 113 (1950), quoting with approval *Black's Law Dictionary* (3d ed), p 1341. See also *People v Carey*, 147 Mich App 444, 452; 383 NW2d 81 (1985) (conservation officers lack the "full authority of peace officers within the meaning of the Michigan Vehicle Code and do not have authority to enforce it").

## II. CONCLUSION

For these reasons, I would look beyond the Fourth Amendment, and thus the lack of guidance from the United States Supreme Court regarding application of the exclusionary rule in this situation, and declare that suppression is the proper remedy in this case pursuant to Const 1963, art 1, § 11.  I would reverse the trial court order denying defendants' motion to suppress evidence, and remand for entry of an order suppressing all photographs taken of defendants' property from a drone.

/s/ Kathleen Jansen