# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

LONG LAKE TOWNSHIP v MAXON

Docket No. 164948. Argued on application for leave to appeal October 18, 2023. Decided May 3, 2024.

Long Lake Township brought an action in the Grand Traverse Circuit Court against Todd and Heather Maxon, alleging that the Maxons were keeping junk cars on their property in violation of a zoning ordinance, a nuisance law, and a 2008 settlement agreement. Neighboring property owners had notified the township of the alleged violations. Because most of the Maxons' property could not be seen from the street, the township hired a drone operator to take aerial photographs and video of the Maxons' property. The photographs and video—which were taken without the Maxons' permission and without a warrant—allegedly showed that the dimensions of their junkyard had increased, contrary to the terms of the settlement agreement. The Maxons moved to suppress the aerial photographs and all other evidence obtained by the township from use of the drone, asserting that the search was illegal under the Fourth Amendment of the United States Constitution. The court, Thomas G. Power, J., denied the Maxons' motion, reasoning that the drone surveillance did not constitute a search. The Court of Appeals granted the Maxons' application for leave to appeal. In a split decision, the Court of Appeals, JANSEN, P.J., and RONAYNE KRAUSE, J. (FORT HOOD, J., dissenting), reversed, holding that the targeted drone surveillance of the Maxons' property violated the Fourth Amendment because it intruded into an area where the Maxons had a reasonable expectation of privacy and because the township obtained the photographs without a warrant and no traditional exception to the warrant requirement applied. 336 Mich App 521 (2021) (*Long Lake I*). The township sought leave to appeal in the Supreme Court, which ordered oral argument on whether to grant the township's application for leave to appeal or take other action. 509 Mich 871 (2022). The Supreme Court thereafter stayed the briefing deadlines and directed the parties to file supplemental briefs regarding whether the exclusionary rule applied to the facts of this case. 509 Mich 921 (2022). After the supplemental briefs were received, the Supreme Court vacated its earlier order directing the Clerk to schedule oral argument on whether to grant the application, and in lieu of granting leave to appeal, the Supreme Court vacated the *Long Lake I* decision and remanded the case to the Court of Appeals for consideration of whether the exclusionary rule applied to the facts of this case. 509 Mich 981 (2022). In a split decision on remand, the Court of Appeals, GLEICHER, C.J., and RONAYNE KRAUSE, J. (JANSEN, P.J., dissenting), assumed that the township's use of a drone to acquire photographs of defendants' property violated the Fourth Amendment. 343 Mich 321 (2022). Applying the balancing test set forth in *United States v Janis*, 428 US 433 (1976), to the facts of

this case—i.e., weighing the primary purpose of the rule, which is to deter future unlawful police conduct, against the societal costs imposed by the exclusion—the Court of Appeals concluded that the cost of suppressing the evidence (i.e., the inability of the township to enforce its zoning regulations) would outweigh any deterrence benefits. After reaching that conclusion, the Court of Appeals held that the exclusionary rule did not apply and that the photographs and video could not be suppressed regardless of whether the township unreasonably searched the Maxons' property; for that reason, the Court of Appeals affirmed the trial court's orders. The Maxons sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 511 Mich 963 (2023).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

The exclusionary rule may not be applied to civil enforcement proceedings that effectuate local zoning and nuisance ordinances and seek only prospective, injunctive relief. In seeking to enforce its zoning and nuisance ordinances, the township only sought prospective, injunctive relief. Under these facts, the costs of excluding the drone evidence outweighed the benefits of suppressing it, and the exclusionary rule therefore did not apply. The decision of the Court of Appeals was affirmed, and the case was remanded to the trial court for further proceedings.

1. The Fourth Amendment of the United States Constitution and Article 1, § 11 of Michigan's 1963 Constitution protect the people of Michigan against unreasonable searches. Generally, the exclusionary rule operates to exclude or suppress evidence in certain legal proceedings if the evidence is obtained in violation of a person's constitutional rights. The exclusionary rule is meant to deter law enforcement misconduct that gives rise to such constitutional violations. Accordingly, Michigan has applied the exclusionary rule in the context of criminal proceedings. Caselaw, however, has never suggested that the exclusionary rule bars the introduction of illegally seized evidence in all proceedings or against all persons. Given the history of the rule, it is only applicable when the objective of deterring wrongful law enforcement conduct is most effectively met. Thus, in deciding whether to exclude evidence under this rule, reviewing courts must consider whether the rule's deterrence benefits outweigh the substantial costs inherent in precluding consideration of reliable, probative evidence. With very limited exceptions, the United States Supreme Court has repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials. For example, the United States Supreme Court has refused to apply the exclusionary rule to parole-revocation hearings, grand-jury proceedings, civil tax proceedings, and civil deportation proceedings. There are unique social costs in suppressing evidence of continuing violations of law, and because it would require the courts to close their eyes to ongoing violations of the law, the exclusionary rule does not apply in proceedings that are intended not to punish past transgressions but to prevent their continuance or renewal. However, in limited circumstances, both the Michigan Supreme Court and the United States Supreme Court have extended the exclusionary rule to civil proceedings—specifically, to civil asset-forfeiture cases; those cases are atypical and, in essence, quasi-criminal proceedings because they require the government to trace the forfeited assets to crime or prove that the defendant used the asset in a criminal manner. In the context of civil negligence or wrongful-death proceedings, the Michigan Supreme Court has also extended the rule to exclude evidence obtained from the warrantless extraction of blood following an automobile crash; the exclusionary rule bars the introduction of that evidence because it involves a degree of intrusiveness not present when police armed with a

warrant search one's home.  Unlike civil asset-forfeiture cases, proceedings to enforce nuisance and zoning ordinances are not quasi-criminal in nature, and the exclusionary rule may not be applied in those enforcement actions when only prospective relief is sought.

2.  The outcome of this case was determined by weighing the costs and benefits of admitting into evidence the assumed unconstitutionally obtained drone video and photographic evidence.  With regard to the costs, given the difficulty in seeing the Maxons' property from the street, the township would have had difficulty ensuring that the Maxons' property conformed with the township's local zoning and nuisance ordinances without the drone evidence.  And any delay in the township's ability to prove the nuisance would damage the interests of the Long Lake Township community as reflected in its local ordinances.  Further, exclusion of the evidence would require the Court to ignore important evidence of the Maxons' ongoing violation of the township's zoning laws.  With regard to the benefits, while excluding the photographs and video captured by the drone may deter the township and other municipal and state officials from using drones in an intrusive and potentially unconstitutional manner, the deterrence would be minimal because (1) the exclusionary rule is meant to deter future law enforcement misconduct, and given the facts of this case, it was unreasonable to believe that exclusion of the evidence would deter future misconduct by law enforcement or any other actor in any way; and (2) the deterrent factor is strongest where the misconduct would result in a criminal penalty, and this case was neither criminal or quasi-criminal in nature, but rather involved a civil infraction in which the township sought only prospective, injunctive relief.  In addition, in contrast with civil asset-forfeiture cases in which the Court has held that the benefits of applying the exclusionary rule outweighed the costs, this case involved the enforcement of local zoning and nuisance ordinances that did not require the township to show that the Maxons or their property was linked to crime, the case was not brought by the state of Michigan in its sovereign capacity, and the case was not brought to sanction the Maxons for a wrongful act; indeed, the township sought only injunctive relief to bring the Maxons in compliance with property-use restrictions as reflected in township zoning and nuisance ordinances.  And the township's search involved the Maxon's yard and curtilage, an area that was less private than inside their home and, by extension, far less private than a person's body.  In light of these differences, the Court's prior decisions applying the exclusionary rule to two narrow categories of civil cases did not support extending that rule to a proceeding to enforce local zoning and nuisance ordinances.  Accordingly, the costs of applying the exclusionary rule in this case outweighed the benefits, and the photographs and video taken by the drone could not be suppressed.  Because the exclusionary rule did not apply in this civil proceeding to enforce zoning and nuisance ordinances, the Court declined to address whether the use of an aerial drone under the circumstances of this case was an unreasonable search or seizure for purposes of the United States or Michigan Constitutions.

Court of Appeals judgment affirmed, and case remanded to the trial court for further proceedings.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED May 3, 2024

S T A T E O F M I C H I G A N

SUPREME COURT

LONG LAKE TOWNSHIP,

     Plaintiff-Appellee,

v                                  No. 164948

TODD MAXON and HEATHER MAXON,

     Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

ZAHRA, J.

We directed oral argument on the application pursuant to MCR 7.305(H)(1) to consider whether plaintiff, Long Lake Township (the Township), violated the Fourth Amendment rights of defendants, Todd Maxon and Heather Maxon (the Maxons), by using an unmanned drone to take aerial photographs and video of defendants' property and, if the Township did engage in an unconstitutional search, whether its photographic and video evidence must be excluded from a civil nuisance abatement proceeding.

Because we hold that the exclusionary rule does not apply to this civil proceeding to enforce zoning and nuisance ordinances, we decline to address whether the use of an aerial drone under the circumstances presented here is an unreasonable search in violation of the United States or Michigan Constitutions.[1] The exclusionary rule operates to exclude or suppress evidence in certain legal proceedings if the evidence is obtained in violation of a person's constitutional rights. The contemporary understanding of the exclusionary rule is that it is a judge-made rule intended to deter law enforcement misconduct in the context of the Fourth Amendment.[2] It is not a constitutional right, and it is not intended to vindicate a defendant's constitutional rights.[3] Michigan aligns with courts across the nation in that, as a general matter, we apply the exclusionary rule in the context of criminal proceedings. This Court has rarely applied the rule in civil proceedings. In fact, outside of the criminal context, this Court has only ever applied the rule to searches related to quasi-criminal legal matters or to the warrantless extraction of blood from a person. For the reasons more fully developed in this opinion, we decline to extend application of the exclusionary rule to civil

---

[1] The use and availability of aerial drones in the public and private sector has dramatically expanded. Drone technology is rapidly evolving, as are people's expectations of privacy in the face of this technology, and there remains uncertainty as to how trespass law applies to low-altitude drone flights. Because we do not need to decide the issue to resolve this case, we leave this question for another day.

[2] See *Davis v United States*, 564 US 229, 246; 131 S Ct 2419; 180 L Ed 2d 285 (2011) ("[W]e have said time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement."); see also *United States v Calandra*, 414 US 338, 347; 94 S Ct 613; 38 L Ed 2d 561 (1974); *Elkins v United States*, 364 US 206, 217; 80 S Ct 1437; 4 L Ed 2d 1669 (1960).

[3] As the Supreme Court of the United States has said, the rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not designed to vindicate "a personal constitutional right of the party aggrieved." *Calandra*, 414 US at 348.

enforcement proceedings that effectuate local zoning and nuisance ordinances and seek only prospective, injunctive relief. We affirm the Court of Appeals and remand this case to the trial court for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case has a long procedural history. In 2007, the Township sued Todd Maxon for allegedly violating its zoning ordinances by, among other things, storing salvaged vehicles on his property. The parties reached a resolution of that litigation and memorialized it in writing. The resolution was favorable to Mr. Maxon because the Township agreed to dismiss its complaint against Mr. Maxon with prejudice and "not to bring [any] further zoning enforcement action . . . based upon the same facts and circumstances [that] were revealed during the course of discovery and based upon the Long Lake Township Ordinance as it exist[ed] on the date of [the] settlement agreement." Mr. Maxon released the Township and its representatives from any causes of action he may have had against them. Although Mr. Maxon did not indicate that he would cease doing any activity that gave rise to the lawsuit, it may reasonably be inferred from the Township's agreement not to bring further zoning actions against Mr. Maxon for the same facts and circumstances discovered in the original action that no future zoning violation would be pursued against him if he maintained the status quo.

In 2016, neighboring residents complained to Township officials that the Maxons were storing excessive junk on their property. The Township hired a contractor to take aerial photographs and video of the Maxons' property by using a flying drone. Aerial photographs and video of the property were taken on three occasions between April 2017 and May 2018. The contractor remotely controlled the drone from an open area near Long

3

Lake Township Hall. In 2018, the Township initiated the instant lawsuit, alleging that by storing excessive amounts of salvaged material on their property the Maxons' use of their property was in violation of Long Lake Township Zoning Ordinance, § 10.2 and Long Lake Township Nuisance Ordinance, §§ 2B and 2G. The Township alleged that the Maxons significantly increased the volume of salvaged materials stored on their property after the 2008 settlement agreement, and it sought to enjoin the salvaging activity, arguing that the property constituted an impermissible salvage yard. The Township relied on the photographs and video taken from the aerial drone to support its case. The Maxons brought a pretrial motion to exclude the photographs and video from use in the civil action, arguing that they were the product of an unreasonable search in violation of the United States and Michigan Constitutions.

The trial court denied the Maxons' motion. On appeal, the Court of Appeals in a published and divided decision concluded that the use of a drone to take aerial photographs and video of the Maxons' property was an unreasonable, warrantless search of the Maxons' property; reversed the trial court's order; and remanded for entry of an order suppressing all photographs and video of the Maxons' property taken by a drone.[4] The Township sought leave to appeal in this Court. We vacated the judgment of the Court of Appeals and remanded to that Court to address whether the exclusionary rule applies in a civil action to enforce zoning and nuisance ordinances.[5] On remand, a different panel of the Court of

---

[4] *Long Lake Twp v Maxon*, 336 Mich App 521, 525; 970 NW2d 893 (2021), vacated and remanded 509 Mich 981 (2022).

[5] We initially directed the Clerk to schedule oral argument on the application. *Long Lake Twp v Maxon*, 509 Mich 871 (2022). Two weeks later, we stayed that order and again

Appeals affirmed the trial court's orders in another published and divided decision, holding that the exclusionary rule did not apply to the facts and circumstances presented in this case.[6] The majority ruled that the photographs and video should not be suppressed regardless of whether the Township unreasonably searched the Maxons' property.[7] The Maxons sought leave to appeal, and we directed the Clerk to schedule oral argument on the application.[8]

## II. STANDARD OF REVIEW

Whether the exclusionary rule applies is a question of law.[9] This Court reviews questions of law de novo.[10]

---

considered the Township's application; in lieu of granting the application, we vacated the judgment of the Court of Appeals and remanded the case to that Court to address whether the exclusionary rule applies to this dispute. *Long Lake Twp v Maxon*, 509 Mich 981 (2022). The order specifically cited "*Pennsylvania Bd of Probation & Parole v Scott*, 524 US 357, 364[; 118 S Ct 2014; 141 L Ed 2d 344] (1998) (declining to extend the operation of the exclusionary rule beyond the criminal trial context); [and] *Kivela v Dep't of Treasury*, 449 Mich 220[; 536 NW2d 498] (1995) (declining to extend the exclusionary rule to a civil tax proceeding)." *Long Lake Twp*, 509 Mich at 981-982.

[6] *Long Lake Twp v Maxon (On Remand)*, 343 Mich App 319, 323, 335-337; 997 NW2d 250 (2022) (*Long Lake Twp (On Remand)*). The case was remanded to the same panel, but Judge GLEICHER replaced Judge KAREN FORT HOOD after Judge FORT HOOD's untimely death in August 2021.

[7] *Id*. at 335-337.

[8] *Long Lake Twp v Maxon*, 511 Mich 963 (2023).

[9] *In re Forfeiture of $180,975*, 478 Mich 444, 450; 734 NW2d 489 (2007).

[10] *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006).

## III. ANALYSIS

The Fourth Amendment of the United States Constitution and Article 1, § 11 of Michigan's 1963 Constitution protect the people of Michigan against "unreasonable searches."[11] But neither Constitution prescribes the remedy if the government unreasonably searches a person or property. Early in our nation's history, law enforcement officials conducted searches and seized evidence in violation of the Fourth Amendment and subsequently used the unconstitutionally seized evidence in criminal prosecutions. The propriety of using such evidence in criminal proceedings was addressed more than 100 years ago in *Weeks v United States*[12] when the Supreme Court of the United States laid the foundation for the exclusionary rule. In that case, Fremont Weeks transported lottery tickets through the mail in violation of the United States Criminal Code. United States Marshals searched his home without a warrant and seized evidence that incriminated him.[13] A jury convicted Weeks. On appeal, he argued that the United States Marshals had violated his Fourth Amendment rights, so the trial judge should not have admitted the evidence obtained from the unconstitutional search.[14] The Supreme Court agreed with Weeks and

---

[11] US Const, Am IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); Const 1963, art 1, § 11 ("The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures.").

[12] *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 2d 652 (1914).

[13] *Id*. at 386-387.

[14] *Id*. at 389.

suppressed the evidence derived from the search to deter police from acting contrary to the demands of the Fourth Amendment in the future. The Supreme Court held:

> The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.[15]

The exclusionary rule is a jurisprudential creation rather than a constitutional rule of law.[16] Consequently, the Supreme Court of the United States has refined the rule over time to better accomplish its intended purposes. The Supreme Court has, therefore, declined to order exclusion of wrongfully seized evidence when the exclusion would not deter unconstitutional law enforcement activity.[17] Limitations on the exclusionary rule are justified because the use of unconstitutionally seized evidence in a criminal proceeding

---

[15] *Id*. at 392.

[16] In *Kivela*, 449 Mich at 233, this Court held that there was no "compelling reason" to construe the exclusionary rule as providing any greater protection than that established by the United States Supreme Court.

[17] See *Silverthorne Lumber Co, Inc v United States*, 251 US 385, 392; 40 S Ct 182; 64 L Ed 319 (1920) (independent-source exception); *Nix v Williams*, 467 US 431, 440-448; 104 S Ct 2501; 81 L Ed 2d 377 (1984) (inevitable-discovery exception); *Nardone v United States*, 308 US 338, 341-343; 60 S Ct 266; 84 L Ed 307 (1939) (attenuated-circumstance exception); *United States v Leon*, 468 US 897, 908-925; 104 S Ct 3405; 82 L Ed 2d 677 (1984) (good-faith exception); *Harris v New York*, 401 US 222, 224-226; 91 S Ct 643; 28 L Ed 2d 1 (1971) (impeachment-of-a-defendant's-testimony exception). In *Mapp v Ohio*, 367 US 643, 655-660; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), the Supreme Court held that the exclusionary rule applies to state governments through the incorporation doctrine.

does not itself violate the Constitution.[18]  Rather, a violation of the Constitution arises from the illegal search or seizure itself, and no exclusion of evidence can cure the invasion of rights a person has already suffered.[19]

Moreover, nothing in the history of the rule suggests that it bars the introduction of illegally seized evidence in all proceedings or against all persons.  In fact, the history of the rule is that it is only applicable where the objective of deterring wrongful law enforcement conduct is most efficaciously met.[20]  Ultimately, reviewing courts must consider whether the rule's deterrence benefits outweigh the " 'substantial social costs' " inherent in precluding consideration of reliable, probative evidence.[21]

Recognizing that the objective of the exclusionary rule is to deter misconduct that gives rise to constitutional violations, the Supreme Court of the United States has repeatedly declined to extend the rule to proceedings other than criminal trials with very limited exceptions.[22]  For example, in *Pennsylvania Bd of Probation & Parole v Scott*,[23] the Supreme Court concluded that the exclusionary rule has no application in parole-revocation hearings, noting that the cost of excluding evidence in parole proceedings is

---

[18] See, e.g., *Leon*, 468 US at 906 ("[T]he Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' "), quoting *Stone v Powell*, 428 US 465, 486; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).

[19] *Leon*, 468 US at 906.

[20] *Scott*, 524 US at 363, citing *Calandra*, 414 US at 348.

[21] *Scott*, 524 US at 363, quoting *Leon*, 468 US at 907.

[22] *Scott*, 524 US at 363.

[23] *Id*. at 364-365.

particularly high because parole is a less restrictive form of imprisonment and a parolee is afforded only a limited degree of freedom in exchange for compliance with the strict conditions of parole. The Court also concluded that the deterrent effect of excluding such evidence would be minimal because (at that time at least) any law enforcement officer searching for evidence would likely be unaware that the subject of the search is a parolee.[24] The Court noted that

> the officer will likely be searching for evidence of criminal conduct with an eye toward the introduction of the evidence at a criminal trial. The likelihood that illegally obtained evidence will be excluded from trial provides deterrence against Fourth Amendment violations, and the remote possibility that the subject is a parolee and that the evidence may be admitted at a parole revocation proceeding surely has little, if any, effect on the officer's incentives.[25]

Similarly, in *United States v Calandra*,[26] the Supreme Court of the United States held that the exclusionary rule does not apply to grand-jury proceedings. The Supreme Court determined that the cost of imposing the exclusionary rule in grand-jury proceedings was too burdensome, observing:

> Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective.[27]

---

[24] *Id*. at 367.

[25] *Id*.

[26] *Calandra*, 414 US 338.

[27] *Id*. at 349.

The Supreme Court stated that it was "uncertain" and "speculative" whether application of the exclusionary rule would deter unlawful law enforcement activity.[28] The Supreme Court thus judged that "it is unrealistic to assume that application of the rule to grand jury proceedings would significantly further th[e] goal [of deterring law enforcement misconduct]."[29]

In *United States v Janis*,[30] the Supreme Court of the United States once again declined to apply the exclusionary rule to unconstitutionally obtained evidence in a civil tax proceeding, noting that the costs of excluding relevant and reliable evidence outweighed the marginal deterrence benefit. The Supreme Court observed that application of the rule in criminal trials "already punished" law enforcement officials for violating the Fourth Amendment, making further application of the exclusionary rule in a civil tax proceeding unnecessary.[31]

Likewise, in *Immigration & Naturalization Serv v Lopez-Mendoza*,[32] the Supreme Court refused to extend the exclusionary rule to civil deportation proceedings, noting the

---

[28] *Id*. at 351.

[29] *Id*.

[30] *United States v Janis*, 428 US 433, 447-448, 454; 96 S Ct 3021; 49 L Ed 2d 1046 (1976).

[31] *Id*. at 448 (quotation marks omitted).

[32] *Immigrations & Naturalization Serv v Lopez-Mendoza*, 468 US 1032, 1038-1050; 104 S Ct 3479; 82 L Ed 2d 778 (1984) ("A deportation hearing is held before an immigration judge. The judge's sole power is to order deportation; the judge cannot adjudicate guilt or punish the respondent for any crime related to unlawful entry into or presence in this country. Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing. . . . In these circumstances, we are persuaded that the *Janis* balance between costs and benefits comes out against applying the exclusionary rule in civil deportation hearings held by the INS.").

incompatibility of the rule with the civil, administrative nature of those proceedings. The Court further observed that one cost of applying the rule to deportation proceedings is that they "are intended not to punish past transgressions but to prevent their continuance or renewal [and application of the rule] would require the courts to close their eyes to ongoing violations of the law. This Court has never accepted costs of this character in applying the exclusionary rule."[33]

In limited circumstances, this Court and the Supreme Court of the United States have extended the exclusionary rule to civil proceedings. For example, both courts have applied the exclusionary rule to civil asset-forfeiture cases.[34] Civil asset-forfeiture cases are atypical civil proceedings because they require the government to trace the forfeited asset to a crime or prove that the defendant used the asset in a criminal manner.[35] Such proceedings are known as quasi-criminal proceedings.[36] This Court has also applied the exclusionary rule to exclude evidence obtained from a warrantless blood draw following

---

[33] *Id*. at 1046.

[34] See, e.g., *One 1958 Plymouth Sedan v Pennsylvania*, 380 US 693, 702; 85 S Ct 1246; 14 L Ed 2d 170 (1965); *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993) (citing *One 1958 Plymouth Sedan*, 380 US 693, and noting that "[t]he exclusionary rule is applicable in forfeiture proceedings").

[35] See *One 1958 Plymouth Sedan*, 380 US at 701 ("It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, *requiring the determination that the criminal law has been violated*, the same evidence would be admissible.") (emphasis added).

[36] *Id*. at 700.

an automobile crash in subsequent civil negligence or wrongful-death proceedings.[37]  This Court explained that the rule applies to such evidence because the "removal of blood from a living person [presents] a degree of intrusiveness not present when police armed with a warrant search one's home."[38]  *Kivela* was a civil tax assessment proceeding where the Court was asked to apply the exclusionary rule to narcotic evidence that was seized by law enforcement pursuant to an unlawful warrant; the Department of Treasury wished to use the evidence, asserting that Kivela owed unpaid taxes on drug sales.[39]  We considered a multipart balancing test that had been adopted by the United States Court of Appeals for the Sixth Circuit when faced with a similar scenario.[40]  We ultimately held that "[i]n the absence of more than 'curious facts' and agreeing with the dissent that there is no direct evidence of bad faith, collusion between the agencies, or unethical behavior on the part of the law enforcement agents," the Court of Appeals "incorrectly found that evidence seized

---

[37] See *Lebel v Swincicki*, 354 Mich 427, 434-441; 93 NW2d 281 (1958); *McNitt v Citco Drilling Co*, 397 Mich 384, 388-394; 245 NW2d 18 (1976).

[38] *Kivela*, 449 Mich at 236, discussing *Lebel*, 354 Mich 427, and *McNitt*, 397 Mich 384.

[39] *Kivela*, 449 Mich at 222-223.

[40] *Id*. at 227-229, 236-238.  The test requires consideration of (1) "[t]he nature of the proceedings," (2) "[w]hether the proposed use of unconstitutionally seized material is intersovereign or intrasovereign," (3) "[w]hether the search and the second proceeding are initiated by the same agency," (4) "[a]bsent an explicit and demonstrable understanding between the two agencies, whether there is a statutory regime in which both agencies share resources, particularly resources derived from one of the proceedings," and (5) "[t]he relationship between the law enforcement responsibilities and expertise of the seizing officials and the type of proceeding at which the seized material is being offered."  *Id*. at 228-229; see also *Wolf v Comm'r of Internal Revenue*, 13 F3d 189, 194-195 (CA 6, 1993).

12

in an improper police search may not be used as the basis of an independent civil jeopardy tax assessment proceeding."[41]

Viewing these cases as a whole, it is clear that application of the exclusionary rule "involves weighing the *costs* and *benefits* in each particular case."[42]  But neither we nor the Supreme Court of the United States has ever "suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence."[43]

We begin with the costs.  The Maxons' property is thickly wooded and "could not be well-viewed from the street" given that " 'very little, if any, of [the Maxons'] property is visible from the ground because the view is blocked by buildings and trees.' "[44]  The Maxons admitted that "the areas behind the home and beside the garages the Township wanted to view with its drone are not visible from a public vantage-point."  Accordingly, without the drone's photographs and video, the Township would have difficulty ensuring that the Maxons bring their property into conformity with its local zoning and nuisance ordinances.  And even if the Township could use other means of surveillance to prove that the Maxons violated the 2008 settlement agreement, suppressing the evidence obtained by the drone and requiring the Township to initiate a new means of surveillance would cause

---

[41] *Kivela*, 449 Mich at 239.

[42] *People v Goldston*, 470 Mich 523, 529; 682 NW2d 479 (2004) (emphasis added), citing *Leon*, 468 US at 906-907; see also *Janis*, 428 US at 454 (directing courts to weigh the "likelihood of deterring the conduct of the state police" against "the societal costs imposed by the exclusion").

[43] *Scott*, 524 US at 368.

[44] Quoting *Long Lake Twp*, 336 Mich App at 526 (alteration in the Maxons' supplemental brief).

a delay in the Township's ability to bring the Maxons into conformity with local zoning and nuisance ordinances. Increasing the difficulty of or causing delays in the Township's ability to prove nuisance would damage the interests of the Long Lake Township community as reflected in its local ordinances.[45]

Further, as the Supreme Court explained in *Lopez-Mendoza*, there are "unique" social costs in suppressing evidence of "continuing violations of the law."[46] In the words of the United States Supreme Court:

> Applying the exclusionary rule in proceedings that are intended not to punish past transgressions but to prevent their continuance or renewal would require the courts to close their eyes to ongoing violations of the law. This Court has never before accepted costs of this character in applying the exclusionary rule.
>
> Presumably no one would argue that the exclusionary rule should be invoked to prevent an agency from ordering corrective action at a leaking hazardous waste dump if the evidence underlying the order had been improperly obtained, or to compel police to return contraband explosives or drugs to their owner if the contraband had been unlawfully seized. On the rare occasions that it has considered costs of this type the Court has firmly indicated that the exclusionary rule does not extend this far.[47]

In this case, the zoning-enforcement action is meant to prevent the Maxons from continuing to thwart the Township's zoning laws. Suppressing this evidence would require this Court to ignore important evidence of this ongoing violation and to close our eyes to ongoing illegal activity. We decline to do so here.

---

[45] *Adkins v Thomas Solvent Co*, 440 Mich 293, 304 n 8; 487 NW2d 715 (1992) ("A public nuisance involves the unreasonable interference with a right common to all members of the general public.").

[46] *Lopez-Mendoza*, 468 US at 1046.

[47] *Id*.

We turn to the benefits.  Excluding the photographs and video captured from the drone may indeed deter the Township and other municipal and state officials from using drones in an intrusive and potentially unconstitutional manner.  But the deterrence would be minimal.  For one, the exclusionary rule is intended to deter future *law enforcement* misconduct.  While we do not totally foreclose the possibility that some other government action may be of such an aggressive nature that a court may conclude that it is appropriate to apply the exclusionary rule to a related proceeding, the facts presented in this case fall far short of such behavior.  Under these facts, it is unreasonable to believe that excluding the photographs and video would deter future misconduct by law enforcement or any other actor in any way.[48]  Further, "[t]he deterrent function is strongest where the unlawful conduct would result in a criminal penalty."[49]  And this case is neither criminal nor quasi-criminal; it is a civil infraction.[50]  The Township is seeking only injunctive relief, which is

---

[48] For example, applying the exclusionary rule to agents or proxies of law enforcement officers who violate the Fourth Amendment while "engaged in the often competitive enterprise of ferreting out crime" might serve the rule's primary purpose: the deterrence of law enforcement officers and their "adjuncts."  *Arizona v Evans*, 514 US 1, 14-15; 115 S Ct 1185; 131 L Ed 2d 34 (1995).

[49] *In re Forfeiture of $180,975*, 478 Mich at 452.

[50] The term "[q]uasi crimes" "embraces all offenses not crimes or misdemeanors, but that are in the nature of crimes,—a class of offenses against the public which have not been declared crimes, but wrongs against the general or local public which it is proper should be repressed or punished by forfeitures and penalties." *Black's Law Dictionary* (rev 4th ed), p 446.  The Supreme Court of the United States uses a four-factor test to determine whether a proceeding is quasi-criminal.  Those factors are whether: "(1) the action was commenced by the [s]tate in its sovereign capacity[;] (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act[;] . . . (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges[; and (4)] . . . the [s]tate could have alternatively sought to enforce a parallel criminal statute." *ACRA Turf Club, LLC v Zanzuccki*, 748 F3d 127, 138 (CA 3, 2014),

15

not a criminal penalty. The Maxons maintain that the case is quasi-criminal because the Township *could have* sought " 'a fine of up to $500 per day[.]' "[51] But that argument fails because the Township did not pursue a fine. Indeed, the Township's decision to pursue only prospective injunctive relief confirms that this suit is civil.[52] And the Township's request for an "award [of] such other costs, fees and relief that the Court deems just" does not transform the case into a quasi-criminal proceeding. Such discretionary awards are routine parts of civil, not criminal, cases.[53]

This civil proceeding also differs in important ways from other civil proceedings in which we have held that the benefits of applying the exclusionary rule outweigh the costs. In asset-forfeiture cases, we have held that "the intent of civil forfeiture . . . is to remove from circulation all cash, property, and contraband used to further drug trafficking," and

---

citing *Sprint Communications, Inc v Jacobs*, 571 US 69, 79-81; 134 S Ct 584; 187 L Ed 2d 505 (2013), *Huffman v Pursue, Ltd*, 420 US 592, 604; 95 S Ct 1200; 43 L Ed 2d 482 (1975), and *Trainor v Hernandez*, 431 US 434, 444; 97 S Ct 1911; 52 L Ed 2d 486 (1977).

[51] Citation omitted.

[52] Cf. *Weinberger v Romero-Barcelo*, 456 US 305, 311; 102 S Ct 1798; 72 L Ed 2d 91 (1982) ("It goes without saying that an injunction is an equitable remedy.").

[53] See MCR 2.625 (taxation of costs); *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014) ("[C]ourts may impose costs in criminal cases only where such costs are authorized by statute."). The analysis may be different if a Township seeks to impose monetary fines to punish each previous day of noncompliance with a local ordinance or where the matter seeks to recover monetary penalties that were previously imposed. See, e.g., *Inc Village of Laurel Hollow v Laverne, Inc*, 24 App Div 2d 615, 615-616; 262 NYS2d 622 (1965) (holding that the exclusionary rule applied to a civil but quasi-criminal action seeking to recover monetary penalties for a contempt finding in zoning- and code-violation matter); but see *Krieger v Rochester*, 42 Misc 3d 753, 767-768; 978 NYS2d 588 (2013) (declining to apply the exclusionary rule in a zoning-enforcement matter that sought to impose *de minimis* civil fines of $50 because such minor penalties were insufficient to make the action quasi criminal in nature).

under that forfeiture statute, the government must show that the forfeited property " 'is traceable to an exchange for a controlled substance[.]' "[54] It is implicit in our prior opinions that civil asset-forfeiture cases are unique because the government must prove that the asset to be forfeited is the product of a crime or was used to further a criminal act.[55]  A case to enforce nuisance and zoning ordinances, however, does not require the government to show that the defendant or property is linked to any crime whatsoever.  Another difference is that, unlike in a civil asset-forfeiture case, this local zoning and nuisance case was not brought by the state of Michigan in its sovereign capacity.[56]  Further, the Township could not have sought to enforce a parallel criminal statute for the Maxons' behavior because there is none.[57]  And in contrast to asset-forfeiture cases, this proceeding was not brought to *sanction* the Maxons' for some wrongful act; indeed, the Township is only seeking injunctive relief to bring the Maxons in compliance with the property-use restrictions adopted by, and applicable to, all in their community.[58]  In short, nuisance- and zoning-ordinance cases that seek only prospective injunctive relief, unlike asset-forfeiture cases,

---

[54] *In re Forfeiture of $180,975*, 478 Mich at 454, 455 (citation omitted).

[55] See, e.g., *In re Forfeiture of $5,264*, 432 Mich 242, 261-262; 439 NW2d 246 (1989) (ruling that the government must show a substantial connection between the asset to be seized and some underlying criminal activity); *In re Forfeiture of $180,975*, 478 Mich at 462 (noting that "a basic purpose of a drug forfeiture proceeding is to establish that the item subject to forfeiture (here the $180,975 in cash) is connected to drug activity").

[56] See *Sprint Communications, Inc*, 571 US at 79; *ACRA Turf Club, LLC*, 748 F3d at 138.

[57] *Id*.

[58] *Id*.

are not quasi-criminal proceedings in which the exclusionary rule may justifiably be applied.

Likewise, our opinions suppressing the introduction of evidence taken from a person's blood in a civil case have noted that the exclusionary rule bars such evidence because it involves "a degree of intrusiveness not present when police armed with a warrant search one's home."[59] By contrast, this aerial surveillance of land from the air involves substantially less intrusion than when law enforcement search a person's home or their body. The Township searched the yard and curtilage of the Maxons' property, but these areas are less private than inside the home and, by extension, far less private than the body. Our narrow, limited application of the exclusionary rule to suppress unlawfully seized evidence from a person's blood in civil proceedings is therefore inconsistent with the Maxons' request that we apply the rule expansively in the present case. In sum, our prior decisions applying the exclusionary rule to two narrow categories of civil cases do not support the application of the exclusionary rule to proceedings to enforce local zoning and nuisance ordinances.

## IV. CONCLUSION

We hold that the costs of applying the exclusionary rule in this case would outweigh the benefits. Applying the exclusionary rule would prevent the Township from effectuating its nuisance and zoning ordinances—a serious cost. It would do so for little benefit given that exclusion of the photographs and video here would not deter future misconduct by law enforcement officers or their adjuncts, proxies, or agents. We agree with the Court of

---

[59] *Kivela*, 449 Mich at 236, citing *Lebel*, 354 Mich 427, and *McNitt*, 397 Mich 384.

Appeals' conclusion that "[t]he exclusionary rule was not intended to operate in this arena," and application of the rule in this case would serve no valuable function.[60]  We therefore affirm the judgment of the Court of Appeals and remand to the circuit court for further proceedings.

Brian K. Zahra
Elizabeth T. Clement
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

[60] *Long Lake Twp (On Remand)*, 343 Mich App at 337 (opinion of the Court).